UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR RIOJAS,<br>    Plaintiff,<br>    v.<br>UNITED STATES DEPARTMENT OF AGRICULTURE, et al.,<br>    Defendants. | Case No. 15-cv-03592-JST<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: ECF Nos. 41, 42, 43 |

Plaintiff Hector Riojas brought this suit under 5 U.S.C. § 7 of the Administrative Procedures Act ("APA"), alleging that the United States Department of Agriculture ("USDA") has promulgated a regulation, 7 C.F.R. § 273.20(b), which contravenes 7 U.S.C. § 2015(g), the underlying statute the regulation was meant to implement.  The statute, in essence, provides that no individual who "receives" Supplemental Security Income ("SSI") benefits shall also receive Supplemental Nutrition Assistance Program ("SNAP") benefits, so long as that individual resides in a State which supplements the SSI benefits provided to its citizens to include the "bonus value of [SNAP benefits]."  The regulation provides that "[o]nce SSI benefits are received, the individual will remain ineligible for food stamp benefits, even during months in which receipt of the SSI benefits is interrupted, or suspended . . . ."

The Court concludes that the challenged regulation cannot be reconciled with the plain language of 7 U.S.C. § 2015(g).  Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment with respect to Plaintiff's claim against the USDA and deny the USDA's Motion for Summary Judgment.  The Court will also grant Plaintiff's Motion for Summary Judgment against Defendant Will Lightbourne, Director of the California Department of Social Services, and deny Defendant Lightbourne's Motion for Summary Judgment.

I.  BACKGROUND

  A.  SSI, SSDI, SNAP, and SSP

Supplemental Security Income ("SSI") is a federal income supplement program designed to help aged, blind, and disabled individuals who have little or no income.  SSI is administered by the United States Social Security Administration ("SSA") and provides monthly cash benefits for those who qualify.  Social Security Disability Insurance ("SSDI"), by contrast, is a federal insurance program managed by the SSA, which provides income supplements to individuals who are restricted in their ability to work because of a qualifying disability.

The Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the Food Stamp Program, provides nutrition assistance in the form of monthly benefits to low-income households.  SNAP is administered nationally by the USDA and funded by the federal government.  Each State, however, is responsible for administering SNAP for its residents, making eligibility determinations, and distributing benefits.  In California, the California Department of Social Services ("CDSS") administers the program, where it is called CalFresh.

The USDA's economists have concluded that "SNAP significantly improves the welfare of low-income households."  L. Tiehen, D. Jolliffe, & C. Gundersen, Alleviating Poverty in the United States: The Critical Role of SNAP Benefits, ERR-132, U.S.D.A., Econ. Res. Serv. i (Apr. 2012), http://www.ers.usda.gov/publications/err-economic-research-report/err132.aspx.  SNAP has been called "a powerful anti-hunger and anti-poverty tool" that "kept 4.8 million people above the poverty line in 2013, including 2.1 million children."  B. Keith-Jennings, "SNAP Helps Roughly 1.7 Million Struggling Veterans, Including Thousands in Every State," Center on Budget and Policy Priorities (Nov. 11, 2014), http://www.cbpp.org/research/snap-helps-roughly-17-million-struggling-veterans-including-thousands-in-every-state.  As former Secretary Leon Panetta noted in a recent article, "because of SNAP, children rarely experience severe hunger and developmental problems because vital nutritional support is available."  L. Panetta, Defending Food Stamps, Politico (Sep. 17, 2013), http://www.politico.com/story/2013/09/food-stamps-panetta-hunger-farm-bill-096939.  Almost 100,000 veterans in California households receive food stamps.  Keith-Jennings, supra.

Individual states may also pay supplemental benefits to their citizens above and beyond the benefits provided by SSI. These supplemental payments are known as State Supplementary Payments ("SSP"). States that increase their SSP to include the value of food stamp allotments in cash are known as "cash-out states." Currently, California is the only cash-out state.

**B. The Challenged Regulation**

7 U.S.C. § 2015(g) provides:

> **RESIDENTS OF STATES WHICH PROVIDE STATE SUPPLEMENTARY PAYMENTS**
>
> No individual who receives supplemental security income benefits under title XVI of the Social Security Act [42 U.S.C. 1381 et seq.], State supplementary payments described in section 1616 of such Act [42 U.S.C. 1382e], or payments of the type referred to in section 212(a) of Public Law 93–66, as amended, shall be considered to be a member of a household for any month, if, for such month, such individual resides in a State which provides State supplementary payments (1) of the type described in section 1616(a) of the Social Security Act [42 U.S.C. 1382e(a)] and section 212(a) of Public Law 93–66, and (2) the level of which has been found by the Commissioner of Social Security to have been specifically increased so as to include the bonus value of food stamps.

This provision was enacted in substantially the same form as part of the Food Stamp Act of 1977. Pub. L. 95-113, Title XIII, Section 6(g) (Sept. 29, 1977).

The Food Stamp Act authorizes the USDA to "issue such regulations consistent with this chapter as the Secretary deems necessary or appropriate for the effective and efficient administration of the supplemental nutrition assistance program . . . ." 7 U.S.C. 2013(c). Pursuant to this authority, on May 2, 1978, the USDA issued proposed regulations implementing the 1977 amendment to the Food Stamp Act. 43 Fed. Reg. 18874. These proposed regulations included a regulation implementing the then-current version of 7 U.S.C. § 2015(g). 43 Fed. Reg. 18874, 18918. After reviewing comments regarding the proposed rules, on October 17, 1978, the USDA issued a final version of the regulation, providing:

> (b) *Receipt of SSI benefits*. In [cash-out states], an individual must actually receive, not merely have applied for, SSI benefits to be determined ineligible for the food stamp program. If the State agency provides payments at least equal to the level of SSI benefits to individuals who have applied for but are awaiting an SSI eligibility determination, receipt of these substitute payments will terminate the individual's eligibility for food stamp benefits. Once

3

> SSI benefits are received, the individual will remain ineligible for food stamp benefits, even during months in which receipt of the SSI benefits is interrupted, or suspended, until the individual is terminated from the SSI program.

43 Fed. Reg. 47898.  The current version of this regulation, 7 C.F.R. § 273.20(b), remains unchanged.

### C.  Plaintiff's Claim

The facts underlying Plaintiff's claim are not in dispute.  In July 2013, Plaintiff was homeless and residing in Humboldt County, California.  On July 30, 2013, Plaintiff submitted an application to Humboldt County for CalFresh benefits and was approved.

On October 23, 2013, Plaintiff applied to the SSA for SSI benefits, as well as for SSDI benefits.  In February 2014, SSA approved Plaintiff for SSI benefits.  On February 18, 2014, SSA deposited a lump sum amount into Plaintiff's bank account to cover the amount of SSI benefits owed to Plaintiff for November 2013 through January 2014.  On February 28, 2014, SSA informed Plaintiff that he had been approved for SSDI benefits and would start to receive a monthly SSDI benefit check in March 2014.  Because Plaintiff's income from his SSDI benefits exceeded the limit above which individuals no longer qualify for SSI benefits, Plaintiff's SSI status was suspended and he received no additional SSI benefits after the lump sum February 18, 2014 payment.

On May 16, 2014, Humboldt County sent Plaintiff a Notice of Action informing him that his CalFresh benefits would be terminated effective May 31, 2014 because he was "receiving aid from SSI/SSP program."  On June 24, 2014, Humboldt County issued a second Notice of Action to Plaintiff, notifying him that he should not have received CalFresh benefits for the months of December 1, 2013 through May 31, 2014 and demanding that Plaintiff repay the overissuance.  Plaintiff challenged his termination from CalFresh, as well as Humboldt County's demand that he repay the overissuance.  After several hearings, an Administrative Law Judge determined that Plaintiff was ineligible for CalFresh because "SSI/SSP recipients in California are ineligible to receive CalFresh benefits."  In so ruling, the Administrative Law Judge specifically relied on the challenged regulation, 7 C.F.R. § 273.20.  The Administrative Law Judge also determined that Plaintiff owed Humboldt County reimbursement for the months of February through May 2014,

but not for the months of December 2013 or January 2014 because Plaintiff had not actually received his lump sum SSI payment until February 2014.[1]

Plaintiff requested voluntary termination from SSI in July 2014. His eligibility for SSI was terminated effective August 1, 2014, at which point he became eligible for CalFresh benefits again.

### D. Jurisdiction

The Court has jurisdiction over Plaintiff's APA claim, as well as Plaintiff's claim for declaratory relief against the USDA, under 28 U.S.C. § 1331. As further explained below, the Court has jurisdiction over Plaintiff's claims against CDSS under 28 U.S.C. § 1331 because Plaintiff's second cause of action, while created by state law, "turn[s] exclusively on federal law." City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 164 (1997).

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

---

[1] 7 C.F.R. § 273.20(b) provides, in part: "In [cash-out states], an individual must *actually receive*, not merely have applied for, SSI benefits to be determined ineligible for the food stamp program." (emphasis added). Plaintiff does not challenge this portion of the regulation. Rather, Plaintiff challenges only the portion of the regulation, which provides: "Once SSI benefits are received, the individual will remain ineligible for food stamp benefits, even during months in which receipt of the SSI benefits is interrupted, or suspended, until the individual is terminated from the SSI program."

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id.  "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## III.   PLAINTIFF'S AND THE USDA'S CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff's first claim asserts that the USDA violated 5 U.S.C. § 706 of the APA when it promulgated the challenged regulation, 7 C.F.R. § 273.20(b), implementing 7 U.S.C. § 2015(g). In particular, Plaintiff challenges the last sentence of 7 C.F.R. § 273.20(b), which provides:

> Once SSI benefits are received, the individual will remain ineligible for food stamp benefits, even during months in which receipt of the SSI benefits is interrupted, or suspended, until the individual is terminated from the SSI program.

According to Plaintiff, this portion of the challenged regulation contravenes 7 U.S.C. § 2015(g), which provides:

> No individual who *receives* [SSI or SSP benefits] . . . shall be considered to be [eligible for food stamps] for any month, if, for

6

>such month, such individual resides in a [cash-out State, such as California] which provides [SSP benefits which] have been specifically increased so as to include the bonus value of food stamps.

(emphasis added). Plaintiff argues that "[t]he language and statutory context of Section 2015(g) are clear that only individuals *receiving* SSI/SSP benefits in cash-out states are excluded from the SNAP program." ECF No. 43 at 13 (emphasis added). As Plaintiff sees it, the challenged regulation is "inconsistent with the statutory language because it also excludes individuals who are *not* receiving SSI/SSP benefits," but who instead received such benefits at some point in the past and whose benefits are currently suspended.[2] Id.

### A. Background Law

In reviewing "an agency's construction of the statute which it administers," courts apply the two-step framework described in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). First, the court asks "whether Congress has directly spoken to the precise question at issue." Id. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842–43. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Id. at 843 n.9.

If, however, "the statute is silent or ambiguous with respect to the specific issue," the court must proceed to the second step of the analysis and ask "whether the agency's [interpretation] is based on a permissible construction of the statute." Id. at 843. In answering this second question, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Id. at 843. n.11. Rather, the court need only conclude that the agency's interpretation is "reasonable." Id. at 843.

---

[2] In Plaintiff's case, he received SSI benefits in the form of a lump sum payment in February 2014. He did not receive SSI benefits in March through May of 2014. Humboldt County sought reimbursement from Plaintiff for the SNAP benefits it had issued to Plaintiff during these three months. The Administrative Law Judge relied on 7 C.F.R. § 273.20 in concluding that Plaintiff was not owed SNAP benefits during these three months, despite the fact that he was no longer currently receiving SSI benefits.

### B. Discussion

Looking first to the text of the statute itself, 7 U.S.C. § 2015(g) provides that "[n]o individual who receives [SSI or SSP benefits] . . . shall be considered to be [eligible for food stamps] for any month, if, for such month, such individual resides in a State which provides [SSP payments,] the level of which has been found by the Commissioner of Social security to have been specifically increased so as to include the bonus value of food stamps." Plaintiff argues that this provision unambiguously expresses Congress' "intent that individuals be eligible to participate in the [food stamp] program unless they receive SSI/SSP funds." ECF No. 46 at 7. The USDA responds that the provision "does not unambiguously compel Plaintiff's interpretation of the word 'receives'" because the provision "does not refer to an individual who *currently* or *continuously* receives such payments." ECF No. 41 at 18–19 (emphasis in original).[3]

The Court concludes at step one of the *Chevron* analysis that the text of the statute unambiguously forecloses the USDA's interpretation. As Plaintiff argues, "[b]ecause the statute uses the present tense 'receives,'[4] case law directs that only people who currently receive SSI or [SSP] payments are categorically excluded from the SNAP program." ECF No. 46 at 9. "The use of the present tense in a statute strongly suggests it does not extend to past actions." Sherley v. Sebelius,[5] 644 F.3d 388, 394 (D.C. Cir. 2011). Indeed, The Dictionary Act[6] provides that "unless

---

[3] Merriam-Webster's Collegiate Dictionary defines "receive" to mean "to come into possession of." Merriam-Webster's Collegiate Dictionary 1038 (11th ed. 2003). The Oxford English Dictionary defines it to mean "take or accept into one's hands or one's possession (something offered or given); accept delivery of (a thing sent); be a recipient (of)." New Shorter Oxford English Dictionary 2499 (1993). Anyone whose SSI benefits are on suspended status obviously does not "come into possession of" SSI benefits, does not "accept" them, and is not "a recipient of" them.

[4] The term "receives" is not defined by the statute. Accordingly, the Court interprets it "by employing the ordinary, contemporary, and common meaning of the word[] that Congress used." Arizona v. Tohono O'odham Nation, 818 F.3d 549, 556 (9th Cir. 2016) (internal quotation marks omitted).

[5] While the Sherley court did find the statute in question to be ambiguous and therefore proceeded to step two of the Chevron analysis, it did so based on Plaintiffs' argument in that case that another statutory term ("research") was broad enough to incorporate an "extended process," occurring both at the time of a "discrete project" and in the past. 644 F.3d at 394. As a result, the Court found the agencies' argument based on the use of the present tense did not unambiguously foreclose Plaintiffs' interpretation. By contrast, here, no other language in 7 U.S.C. § 2015(g) suggests that "receive" should incorporate an individual's receiving benefits in the past.

[6] "The Dictionary Act 'provides general rules of statutory construction' applicable to the United States Code." United States v. Jackson, 480 F.3d 1014, 1019 (9th Cir. 2007) (quoting United

the context indicates otherwise . . . words used in the present tense include the future as well as the present." 1 U.S.C. § 1. This provision implies that "the present tense generally does not include the past." Carr v. United States, 560 U.S. 438, 448 (2010). See also United States v. Jackson, 480 F.3d 1014, 1019 (9th Cir. 2007) (reviewing the text of the Dictionary Act, and noting that "Congress did *not* say that its usage of the present tense applies to past actions, an omission that, given the precision of the Dictionary Act in this regard, could not have been an oversight.") (emphasis in original); Bonnichsen v. United States, 367 F.3d 864, 875 (9th Cir. 2004) (finding that because "[t]he text of the relevant statutory clause is written in the present tense ('of, or relating to, a tribe, people, or culture *that is* indigenous') . . . the statute *unambiguously* requires that human remains bear some relationship to a *presently existing* tribe, people, or culture to be considered Native American.") (second emphasis added).

The USDA's interpretation, by contrast, holds that "[o]nce SSI benefits are received, the individual will remain ineligible for food stamp benefits, *even during months in which receipt of the SSI benefits is interrupted, or suspended . . . .*" 7 U.S.C. § 273.20 (emphasis added). In this way, the USDA construes the present tense verb "receives" to include an individual's having received benefits in the past "even during months in which receipt of the SSI benefits is interrupted, or suspended." Id. That is, an individual is deemed to "receive" SSI benefits so long as that individual received such benefits at some point in the past, even if the individual is no longer currently receiving the benefits. Such a construction is directly at odds with Congress' use of the present tense in 7 U.S.C. § 2015(g).

The USDA responds by arguing that "[i]t is well-recognized that a statute's use of '[t]he present tense is commonly used to refer to past, present, and future all at the same time.'" ECF No. 41 at 19 (citing Coalition for Clean Air v. S. Cal. Edison Co., 971 F.2d 219, 225 (9th Cir. 1992)). This principle, however, is far from "well-recognized." Indeed, in Carr, the Supreme Court cast doubt on the Coalition for Clean Air's invocation of this "commonly used" principle, noting that the Coalition for Clean Air court did not "offer[] [any] examples of such usage." 560

---

States v. Middleton, 231 F.3d 1207, 12010 (9th Cir. 2000)).

U.S. at 448 n.5. The Supreme Court went on to explain that "[p]erhaps, as the Dictionary Act itself recognizes, there may be instances in which 'context' supports this sort of omnitemporality, but it is not the typical understanding of the present tense in either normal discourse or statutory construction." Id.

Here, other language within 7 U.S.C. § 2015(g) makes clear that the statutory term "receives" does not apply to receipt of SSI benefits in the past if an individual is not receiving SSI benefits in a particular month. 7 U.S.C. § 2015(g) provides that "[n]o individual who receives [SSI or SSP benefits] . . . shall be considered to be [eligible for food stamps] *for any month*, if, *for such month*, such individual resides in a [cash-out State]." (emphasis added). That is, the provision contemplates that eligibility for food stamps will be assessed on a monthly basis. If for any particular month an individual resides in a cash-out State where the SSP payments have "been found by the Commissioner of Social security to have been specifically increased so as to include the bonus value of food stamps," 7 U.S.C. § 2015(g), then for that month, the individual cannot receive food stamps in addition to SSI benefits. The fact that the statute specifically requires this assessment to be made on a month-to-month basis supports Plaintiff's argument that the present tense use of the verb "receives" means just what it says. By contrast, no other language in the provision itself supports a reading of "receive" that would encompass receipt of SSI benefits in the past.[7]

The USDA also argues that the challenged regulation is "consistent with the legislative history of the Food Stamp Act." ECF No. 44 at 27. However, because the Court has already determined that "the plain meaning of the statute is unambiguous, that meaning is controlling and [the Court] need not examine legislative history as an aid to interpretation unless the legislative

---

[7] The Court also rejects the USDA's argument premised on the fact that the Department's own interpretation of the statutory term "receives" is internally consistent with other regulations the Department has issued regarding the Food Stamp Act. ECF No. 41 at 20. While the Court would certainly consider other provisions of the Food Stamp Act itself which hypothetically used "receive" in a manner consistent with the USDA's interpretation here, the USDA does not cite any authority supporting its suggestion that the Court ought to use the USDA's promulgation of regulations regarding other sections of the Food Stamp Act in interpreting 7 U.S.C. § 2015(g) at the first step of the *Chevron* analysis. Internally consistent as these regulations may be, such consistency does not help the Court to interpret Congress' intent in enacting 7 U.S.C. § 2015(g).

history clearly indicates that Congress meant something other than what it said." Close v. Thomas, 653 F.3d 970, 975 (9th Cir. 2011) (internal quotation marks omitted).  The USDA does not cite to any legislative history on point.  Rather, the USDA relies on general provisions of the Food Stamp Act, providing that Congress' goals in enacting the statute included "hold[ing] program costs close to current program levels" and "simplify[ing] administration."  ECF No. 44 at 27 (quoting H.R. Rep. No. 95-464, 1 (1977)); ECF No. 41 at 21–23.  Because the legislative history does not "clearly indicate[] that Congress meant something other than what it said," the Court need not examine it to aid its interpretation of the statute.

Finally, the USDA argues that "Congress affirmed USDA's interpretation [of the challenged regulation] by reenacting the relevant provision of the Food Stamp Act without change."  ECF No. 44 at 29; ECF No. 41 at 23–24.  According to the USDA, since the challenged regulation was promulgated, "the Food Stamp Act has been amended by Congress over twenty times, most recently by the Food and Nutrition Act of 2008, which was enacted July 22, 2014."  ECF No. 41 at 19.  "By repeatedly amending the Food Stamp Act, and yet reenacting Section 2015(g) of the statute without change, Congress effectively accepted USDA's interpretation of what it means to be an 'individual who receives' SSI and SSP in cash-out states."  Id. (citing Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 845–46 (1986)).

This argument is unpersuasive.  Unlike in some of the authority cited by the USDA in which Congress "explicitly affirmed" the agency's interpretation of a statute through amendments to the legislation in question, Schor, 478 U.S. at 846, the USDA provides no evidence that any member of Congress was ever aware of its interpretation of the 7 U.S.C. § 2015(g), let alone that Congress "explicitly affirmed" that interpretation.  In such circumstances, "we consider the . . . re-enactment to be without significance."  Brown v. Gardener, 513 U.S. 115, 121 (1994) (quoting United States v. Calamaro, 354 U.S. 351, 359 (1957)).  Moreover, where, as here, "the law is plain, subsequent reenactment does not constitute an adoption of a previous administrative construction."  Gardener, 513 U.S. at 121 (quoting Demarest v. Manspeaker, 498 U.S. 184, 190 (1991)).  See also id. (citing Mass. Trustees of Eastern Gas & Fuel Assocs. v. United States, 377 U.S. 235, 241–42 (1964) for the proposition that "congressional reenactment has no interpretive

11

1  effect where regulations clearly contradict requirements of statute").

2        Ultimately, the Court concludes that the USDA's interpretation of 7 U.S.C. § 2015(g) fails

3  at step one of the Chevron analysis. Accordingly, the Court grants Plaintiff's Motion for

4  Summary Judgment and denies the USDA's Motion for Summary Judgment.

## IV. PLAINTIFF'S AND CDSS'S CROSS-MOTIONS FOR SUMMARY JUDGMENT

      Plaintiff's second claim seeks a writ of mandate under California Code of Civil Procedure section 1094.5. Specifically, Plaintiff argues that this court may set aside the Administrative Law Judge's decision holding that Plaintiff owed Humboldt County reimbursement for the months of February through May 2014 because that decision, which relied on 7 C.F.R. § 273.20(b), was contrary to 7 U.S.C. § 2015(g). See Cal. Code Civ. Pro. § 1094.5(b), (f). CDSS offers three arguments in opposition to Plaintiff's Motion for Summary Judgment and in support of its own Motion for Summary Judgment on Plaintiff's second claim.

### A. Subject Matter Jurisdiction

      First, CDSS argues that the Court lacks subject matter jurisdiction because the sole cause of action against CDSS, California Code of Civil Procedure section 1094.5, is a state law cause of action. ECF No. 42 at 12. The Court disagrees.

      28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." According to the "well-pleaded complaint" rule, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). Although the "'well-pleaded complaint' rule . . . severely limits the number of cases in which state law 'creates the cause of action' that may be initiated in . . . federal district court," causes of action created by state law "might still 'arise under' the laws of the United States if a well-pleaded complaint established that [the plaintiff's] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California, 463 U.S. 1, 13 (1983). Plaintiff's second cause of action, while created by state law, "turn[s] exclusively on

United States District Court
Northern District of California

federal law" because the only question in dispute between the parties is whether the challenged regulation is a permissible interpretation of 7 U.S.C. § 2015(g).  City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 164 (1997).  Accordingly, Plaintiff's second claim fits within the well-pleaded complaint rule.  Id.; Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005) (federal question jurisdiction exists where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.").[8]

### B. Eleventh Amendment Bar

"Because of the Eleventh Amendment, States may [generally] not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity."  Green v. Mansour, 474 U.S. 64, 68 (1985).  However, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their *future* conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury."  Quern v. Jordan, 440 U.S. 332, 337 (1979) (emphasis added).  Thus, "a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity."  Doe v. Lawrence Livermore Nat. Lab., 131 F.3d 836, 839 (9th Cir. 1997).  See also Hason v. Medical Board of California, 279 F.3d 1167, 1171 (9th Cir. 2002) ("The *Ex Parte Young* doctrine provides that the Eleventh Amendment does not bar suits for prospective injunctive relief brought against state officers "in their official capacities, to enjoin an alleged ongoing violation of federal law.").

CDSS asserts that "the Eleventh Amendment bars Plaintiff's claim against [it] in federal Court" because "Plaintiff seeks an order from this Court to retroactively grant him CalFresh benefits for a short three month period two years ago."  ECF No. 42 at 9.  Plaintiff responds that "[c]ontrary to the Director's assertion, [he] is not here requesting 'retroactive monetary relief,'" which would be barred by the Eleventh Amendment.  ECF No. 47 at 14.  "Rather, the relief that [Plaintiff] requests is forward-looking in that it requires the Director to reverse his [prior] decision

---

[8] Because the Court concludes that federal question jurisdiction exists, it need not address Plaintiff's argument in the alternative that supplemental jurisdiction exists.  See ECF No. 47 at 9.

1    and make a new determination about [Plaintiff's] eligibility in light of the Court's conclusion on
2    the merits." Id.
3      The Court agrees with Plaintiff.  Under California Code of Civil Procedure section
4    1094.5(f), if the court grants a writ of mandate, "it may order the reconsideration of the case in
5    light of the court's opinion and judgment and may order respondent to take such further action as
6    is specially enjoined upon it by law."  Plaintiff requests just this: that the Court order CDSS to
7    "make a new determination about [Plaintiff's] eligibility [for SNAP benefits between March 2014
8    and May 2014] in light of the Court's conclusion on the merits."  ECF No. 47 at 14.  Because
9    Plaintiff seeks "prospective injunctive relief," the Eleventh Amendment does not bar his claim
10   against CDSS.

**C. The Merits of Plaintiff's Claim for a Writ of Mandate**

12     Under California Code of Civil Procedure section 1094.5(a) & (b), a writ of mandate may
13   be issued "for the purpose of inquiring into the validity of any final administrative order" if "the
14   respondent has proceeded without, or in excess of, jurisdiction" or "there was [a] prejudicial abuse
15   of discretion."  "Abuse of discretion is established if the respondent has not proceeded in the
16   manner required by law, the order or decision is not supported by the findings, or the findings are
17   not supported by the evidence." Cal. Code Civ. Pro § 1094.5(b).
18     The Administrative Law Judge determined that Plaintiff was ineligible for CalFresh
19   because "SSI/SSP recipients in California are ineligible to receive CalFresh benefits."  In so
20   ruling, the Administrative Law Judge relied on the challenged regulation, 7 C.F.R. § 273.20.  In
21   Plaintiff's Motion for Summary Judgment, Plaintiff asserts that this Court should issue a writ of
22   mandate to the CDSS because the CDSS' "decisions upholding the termination of [Plaintiff] from
23   the CalFresh program and the determination that he received an overissuance from March through
24   May 2014 are contrary to law," that is contrary to 7 U.S.C. § 2015(g).  ECF No. 43 at 19.
25     In CDSS' Motion for Summary Judgment, CDSS responds that a writ of mandate may not
26   be issued because "at the time the [Administrative Law Judges'] decisions issued, the federal
27   regulation applied and the [Administrative Law Judges] were required to rule in accordance with
28   the regulation." ECF No. 42 at 16.  This response is not persuasive.  As Plaintiff correctly argues

14

in his Reply Brief, "[t]he fact that the administrative law judge followed the federal regulation does not make the decision legally correct." ECF No. 50 at 9. The Court has ruled that the federal regulation on which the administrative law judge relied was, itself, contrary to 7 U.S.C. section 2015(g). CDSS does not cite any authority for the proposition that a writ of mandate should not be issued where an administrative agency issues a ruling premised on a regulation, which regulation was subsequently determined to be inconsistent with the underlying statute.

Accordingly, the Court concludes that the Administrative Law Judge's ruling that Plaintiff was not eligible for CalFresh benefits from March 2014 through May 2014 (and therefore owed Humboldt County reimbursement for the overissuance Plaintiff received for those months) was contrary to the law. The Court will therefore issue a writ of mandate to the CDSS and order the CDSS to re-evaluate Plaintiff's claim consistent with this order.

## CONCLUSION

The Court grants Plaintiff's Motion for Summary Judgment and denies the USDA's Motion for Summary Judgment. The Court also denies Defendant Will Lightbourne's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: June 30, 2016

_____
JON S. TIGAR
United States District Judge